IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

JUSTIN T. HOLCOMBE,     :
            :
  Plaintiff,       :
            :  CIVIL ACTION FILE
v.            :
            :  No. 4:15-cv-00154-LMM
DIRECTV, LLC,      :
            :
  Defendant.      :
_____:

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO FORCE ARBITRATION**

**INTRODUCTION AND STATEMENT OF FACTS**

"'[T]aking on the role of a private attorney general under the Telephone Consumer Protection Act,'" Plaintiff JUSTIN T. HOLCOMBE ("HOLCOMBE") brought this action for damages and injunctive relief against DIRECTV, LLC ("DIRECTV") in order to stop DIRECTV's nuisance telemarketing calls and to obtain redress for the annoyance of almost a hundred telemarketing calls over a one year period after Plaintiff was no longer receiving service, completed all of his obligations to DIRECTV, and asked not to be called again. *Lary v. Trinity Physician Fin. & Ins. Svcs.*, 780 F. 3d 1101, 1105 (11th Cir. 2015) *quoting Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010); *Doc 1-1*.

Between April 2010 and March, 2014, Plaintiff was a subscriber of satellite television services from DIRECTV. *Doc. 1-1*, ¶ 10; *Doc. 4-2*, ¶¶ 8, 18.  In March, 2014, Plaintiff called DIRECTV to cancel his service.  *Doc. 1-1*, ¶ 11; *Doc. 4-2*, ¶ 20.  Despite having disputed it, Plaintiff paid his final bill to DIRECTV within one month of receiving it.  *Doc. 1-1*, ¶ 11; *Doc. 4-2*, ¶ 21-23; *Holcombe Decl.,* ¶¶ 7-12.  These facts do not appear to be in dispute.

When Plaintiff called DIRECTV to cancel his service, he explained that he wanted the service cancelled as of the date in which he had already paid so that he would not have to deal with future bills or refunds for overpayment.  *Holcombe Decl.*, ¶ 7.  As a result, Plaintiff was surprised to see another month's bill from DIRECTV on March 17, 2014, so he called to dispute the bill. *Id.* at ¶¶ 8-9.  DIRECTV customer service told Plaintiff that he was obligated to pay the bill, and Plaintiff asked DIRECTV to delete his credit card and telephone numbers from its records because he did not want to ever do business with DIRECTV again and did not want to receive any calls from DIRECTV.  *Id.* at ¶¶ 10-11.

Despite the dispute, Plaintiff paid the final bill in order to protect his credit, as he did not want any delinquency on his credit reports.  *Id.* at ¶¶ 12-13.  Despite having paid his final bill and no longer receiving service from DIRECTV, DIRECTV has engaged in a telemarketing call campaign directed at plaintiff's

residence with calls as recent as May 26, 2015. *Id*. at ¶¶ 16-25. When Plaintiff has returned calls, he has been informed that DIRECTV was calling to solicit Plaintiff to enter into a new 24 month agreement for satellite television services for $19.99 for the first 12 months with regular rates thereafter. *Id*. at ¶¶ 18, 23. Plaintiff declined new service and asked, on multiple occasions, to be placed on DIRECTV's do not call list. *Id*. at ¶¶ 19-20.

DIRECTV did not adhere to Plaintiff's multiple requests to stop calling, so Plaintiff brought this action to obtain statutory damages and an injunction to prevent future calls. *Id*. at ¶ 26. DIRECTV now seeks to impose the terms of its customer agreement to compel arbitration of claims unrelated to any such agreement. *Doc. 4*. Plaintiff's claims derive from DIRECTV's attempts to encourage Plaintiff to enter into a *new agreement* for 24 months of satellite television service after all prior agreements or obligations regarding the old account had been completed. *Doc. 1-1*; *Holcombe Decl.*, ¶¶ 18, 23. Plaintiff shows that Defendant's motion to force arbitration should be denied for the following reasons:

▸ The effective vindication doctrine precludes the enforcement of an arbitration clause which on its face exculpates the Defendant from liability under private attorney general claims like the TCPA; and

► Plaintiff's claims are not within the scope of the arbitration clause insofar as they do not relate to the customer agreement, any addendum to the customer agreement, or Plaintiff's prior DIRECTV service.

Accordingly, Defendant's motion to force arbitration must be denied.

## ARGUMENT AND AUTHORITY

### I.   Arbitration Generally.

"The FAA [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  The FAA's primary substantive provision provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. *See also Rent-A-Center*, 130 S. Ct. at 2776.  "The FAA thereby places arbitration agreements on an equal footing with other contracts... and requires courts to enforce them according to their terms... Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 130 S. Ct. at 2776 (internal citations omitted).

"In enacting the FAA, Congress demonstrated a 'liberal federal policy

favoring arbitration agreements...' Therefore, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations...' Notwithstanding this strong federal policy, however, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations omitted). "[B]road arbitration clauses cannot be extended to compel parties to arbitrate disputes they have not agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1195 (11th Cir. 2004).

When deciding whether a matter must be submitted to arbitration, the court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the specific dispute falls within the substantive scope of that agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). In this case, DIRECTV's motion must be denied because the arbitration clause is unenforceable under the Federal "effective vindication" doctrine. In the alternative, DIRECTV's motion should be denied because Plaintiff's claims are not within the scope of the arbitration clause.

## II.    The Purported Agreement is an Unenforceable Exculpatory Clause.

### A.  The Effective Vindication Rule - Generally.

Each iteration of the DIRECTV arbitration clause is unenforceable in this

case under the "effective vindication" doctrine which prohibits the use of an arbitration provision to exculpate a party from liability for Federal statutory claims.  In *Mitsibushi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., the Supreme Court first visited whether claims brought pursuant to Federal statutes empowering enforcement by private attorneys general were arbitrable. 473 U.S. 614 (1985). In *Mitsibushi Motors*, the court held such arbitration agreements were enforceable "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* at 637. In dicta, the court noted that when an arbitration agreement amounts to "a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Id.* at fn. 18.

The U.S. Supreme Court recently revisited the "effective vindication" rule and defined it as follows:

> As we have described, the exception finds its origin in the desire to prevent 'prospective waiver of a party's **right to pursue** statutory remedies,' *Mitsubishi Motors*, [473 U.S. 614] at 637, n. 19, 105 S.Ct. 3346 (emphasis added). **That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights**. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. *See Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights"). But the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to*

*pursue* that remedy.

*American Exp. v. Italian Colors Restaurant*, __ U.S. __, 133 S.Ct. 2304, 2310-2311 (2013) (italic emphasis in original)(bold emphasis added)[1].

The arbitration provisions provided by DIRECTV each provide in paragraph 9(c):

---

[1]      The Eleventh Circuit has not directly addressed the effective vindication doctrine under the Federal Arbitration Act as it relates to a provision forbidding the **right to pursue** statutory remedies.  It acknowledged the rule in *Walthour v. Chipio Windshield Repair, LLC*, but noted that "[t]he effective vindication exception is not at issue in this case." 745 F. 3d 1326, 1334, fn. 7 (11th Cir. 2014). It applied similar reasoning to the doctrine in *Dale v. Comcast Corp.*, 498 F. 3d 1216 (11th Cir. 2007), which is no longer good law in light of *American Exp. v. Italian Colors Restaurant*, __ U.S. __, 133 S.Ct. 2304, 2310-2311 (2013). The arbitration clause in this case goes beyond a class action ban and prohibits individual statutory private attorney general suits, which the Supreme Court condemned in *American Express*.

In the context of international arbitration under the New York Convention, rather than Chapter 1 of the Federal Arbitration Act which applies in this case, the Eleventh Circuit has issued contrasting decisions applying *Mitsubishi*'s effective vindication rule. *Cf. Thomas v. Carnival Corp.*, 573 F. 3d 1113 (11th Cir. 2009)(applying the rule to invalidate an arbitration agreement) and *Lindo v. NCL (Bahamas), Ltd.*, 652 F. 3d 1257 (11th Cir. 2011)(holding that application of the rule at the pre-enforcement stage runs afoul the New York Convention which limits "public policy" defenses to the enforcement stage). The rule articulated by the majority in *Lindo* is confined to international cases applying the New York Convention.  *Id.; See also Bautista v. Star Cruises*, 396 F. 3d 1289, 1302 (11th Cir. 2005) (distinguishing domestic FAA cases and Convention cases). The Federal Arbitration Act's savings clause, 9 U.S.C. § 2, and the effective vindication doctrine articulated by the Supreme Court in *American Exp. v. Italian Colors Restaurant* control this case.

(ii) **Neither you nor we shall be entitled to** join or consolidate claims in arbitration by or against other individuals or entities, or **arbitrate any claim** as a representative member of a class or **in a private attorney general capacity**.

*Docs 4-3*, *4-4, 4-5, 4-6, 4-7.*  Although worded differently in each version, each of the agreement's paragraph 9 also contains a reverse severability provision requiring that the entire arbitration agreement be stricken if the private attorney general ban is declared unenforceable. *Id.*

Accordingly, to the extent Plaintiff is acting in a "private attorney general" capacity in bringing his TCPA claims, the arbitration agreement eliminates the Plaintiff's *right to pursue* his claims at all, even individually, which violates the "effective vindication" rule articulated in *American Exp.* (*supra*).

### B.  Plaintiff's TCPA Claims are Private Attorney General Claims.

"'[T]aking on the role of a private attorney general under the Telephone Consumer Protection Act,'"  Plaintiff brought this action for statutory damages and injunctive relief against DIRECTV. *Lary v. Trinity Physician Fin. & Ins. Svcs.*, 780 F. 3d 1101, 1105 (11th Cir. 2015) *quoting Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010); *Doc 1-1*.  The TCPA provides for a 3 prong enforcement mechanism: 1) the FCC may enforce its provisions, 2) State Attorneys General may enforce its provisions pursuant to 47 U.S.C. § 227(g), and 3) Consumers may enforce some provisions as private attorneys

general via private rights of action. *See* 47 U.S.C. § 227(b)(3) and (c)(5); *See also Mistubishi Motors v. Arrow Financial Services, LLC*, 565 U.S. ___, 132 S. Ct. 740, 746 (2012) (explaining the TCPA's enforcement mechanisms). The TCPA provides for a successful plaintiff to recover statutory damages of up to $500 for each such violation, which may be trebled for a willful or knowing violation. 47 U.S.C. § 227(c)(5). "And given the relatively small amount of statutory damages available under the TCPA, trebling these damages appears to be a mechanism to encourage victims of [violations] to file suit." *Alea London Ltd. v. American Home Services, Inc.*, 638 F. 3d 768, 778-79 (11th Cir. 2011).

The private attorney general concept for statutory enforcement via private rights of action for statutory and/or treble damages is well-recognized.  In *Mistubishi Motors*, when the Supreme Court first addressed the effective vindication rule and the arbitrability of Federal statutory claims, the court noted:

> The provision for mandatory treble damages — unique in federal law when the statute was enacted — provides a special incentive to the private enforcement of the statute, as well as an especially powerful deterrent to violators. What we have described as "the public interest in vigilant enforcement of the antitrust laws through the instrumentality of the private treble-damage action..." The interest in wide and effective enforcement has thus, for almost a century, been vindicated by enlisting the assistance of "**private Attorneys General**"; we have always attached special importance to their role because "[e]very violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress." *Hawaii v. Standard Oil Co., 405 U. S. 251, 262 (1972).*

473 U.S. 614, 653-54 (1985)(bold emphasis added).

Since that time, courts have routinely applied the private attorney general label to consumers enforcing statutes for statutory and/or treble damages similar to the TCPA.  *See Lary v. Trinity Physician Fin. & Ins. Svcs.*, 780 F. 3d 1101, 1105 (11th Cir. 2015) *quoting Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) (referring to a TCPA plaintiff as a "private attorney general"); *McGowan v. King*, 569 F.2d 845, 848 (5th Cir. 1978)[2]  ("[T]he scheme of the [Truth in Lending Act] is to create a system of private attorneys general to aid in its enforcement."); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) ("[T]he [Fair Debt Collection Practices] Act should be enforced by debtors acting as private attorneys general."); *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 429-30 (2005) (referring to RICO Plaintiffs as "private attorney generals."). "'Unlike most private tort litigants, [a plaintiff who brings such an action] seeks to vindicate important * * * rights that cannot be valued solely in monetary terms' and congress has determined that the public as a whole has an interest in the vindication of the statutory rights."  *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995), *quoting City of Riverside v. Rivera*, 477 U.S. 561 (1986).

---

[2] Decisions of the old Fifth Circuit are binding upon Courts in this Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir.1981).

Plaintiff's complaint seeks to recover statutory and treble damages under the TCPA as a private attorney general pursuant to the enforcement mechanism intended by Congress. *Doc. 1-1*. While a class action ban in an arbitration provision is enforceable because the Plaintiff can pursue his claims individually in arbitration, *See American Exp.* (*supra*), the arbitration provision provided in this case goes beyond preventing class actions and prevents the Plaintiff herein from pursuing his remedies on a individual basis as a "private attorney general." *Doc. 4-3*, ¶ 9. Because the claims asserted in this action are "private attorney general" claims and the arbitration clause, on its face, deprives the Plaintiff of his *right to pursue* his statutory claims, the arbitration clause is unenforceable under the effective vindication doctrine. This is the precise scenario upon which the "effective vindication" doctrine applies after the Supreme Court's decision in *American Exp. v. Italian Colors Restaurant*, __ U.S. __, 133 S.Ct. 2304, 2310-2311 (2013).

**III.  The Arbitration Agreement Does Not Apply to this Dispute.**

The Federal Arbitration Act provides:

A written provision in... a contract evidencing a transaction involving commerce to settle by arbitration **a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing **controversy arising out of such a contract, transaction, or refusal**, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

- 11 -

law or in equity for the revocation of any contract.

9 U.S.C. § 2 (**bold emphasis added**).  The arbitration agreement at issue provides:

> In order to expedite and control the costs of disputes, you and we agree that any legal or equitable claim **relating to this Agreement, any addendum, or your Service** (referred to as a "Claim) will be resolved as follows...

*Doc. 4-3*, ¶ 9. (**bold emphasis added**).  Plaintiff's claims in this case are not related to the Agreement, any addendum, or to Plaintiff's prior DIRECTV service. Rather, Plaintiff's claims arise from DIRECTV's attempts to solicit Plaintiff to enter into a *new* 24 month term agreement for *new* services after the old agreements had been terminated and completed. *Holcombe Decl.*, ¶¶ 15-26; *Doc 1-1*, ¶¶ 13-21.

DIRECTV simply had no reason to call Plaintiff about his former account after the final bill was paid and all equipment was returned.  Rather, the calls were an attempt to solicit Plaintiff to enter into a *new* agreement. *Holcombe Decl.*, ¶¶ 18, 23.  Unlike cases involving collection calls brought pursuant to other TCPA provisions not at issue in this case, *See* 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff's claims regarding telephone solicitations simply do not relate to Plaintiff's former account.  *Id.*  Neither the plain language of the FAA nor the arbitration agreement as quoted above compel the arbitration of claims that are wholly independent of, and do not relate to, the underlying agreement. *Holcombe Decl.*, ¶¶ 15-26; *Doc 1-*

*1*, ¶¶ 13-21.

DIRECTV asks this court to read its arbitration clause to extend to claims that arise after the completion of the underlying contract and that do not relate to the contract. "[B]road arbitration clauses cannot be extended to compel parties to arbitrate disputes they have not agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1195 (11th Cir. 2004). The Tenth Circuit has noted:

> For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.

*Coors Brewing Co. v. Molson Breweries*, 51 F. 3d 1511, 1516 (10th Cir. 1995). In another TCPA case, the Southern District of California held that an arbitration clause so broad would be unenforceable, otherwise "'absurd results [would] ensue[.]'" *In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F.Supp. 2d 1253 (S.D.Cal. 2012) *quoting Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (noting that an arbitration clause could not reach wrongful death or conversion claims years after the last transaction).

The arbitration clause at issue here is not as broad as the one at issue in *Jiffy Lube*. It is clearly limited to matters "relating to this Agreement, any addendum, or your Service." *Doc. 4-3*, ¶ 9. However, DIRECTV is asking this court to read

the contract to be so broad as to reach the "absurd results" decried in *Jiffy Lube*, *Steinkemp*, and *Coors*.  Neither the plain language of the FAA nor the arbitration agreement reach this result.  *See also Wagner v. Discover Bank*, No. 12-CV-02786-MSK-BNB, 2014 WL 128372 (D. Colo. Jan. 13, 2014) (TCPA claims that do not arise from or relate to the contract requiring arbitration are outside the scope of the arbitration agreement). Put simply, it would be absurd for Plaintiff to be deemed to have agreed to arbitrate claims that arose after the customer agreement was terminated and did not relate to the agreement.

## IV.    Plaintiff Demands a Trial by Jury.

"[A]rbitration under the [FAA] is a matter of consent, not coercion[.]"  *Volt Info.Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  If the court cannot rule summarily in favor of Plaintiff, then Plaintiff requests a jury trial of the issues of whether or not Plaintiff's claims regarding telephone solicitations are within the scope of the arbitration agreement.  9 U.S.C. § 4 ("Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue[.]").

## V.    Conclusion.

DIRECTV's private attorney general ban is unenforceable under the effective vindication doctrine because it forbids the Plaintiff from individually pursuing Federal statutory claims.  Because the arbitration clause contains a

reverse severability clause demanding the entire arbitration agreement be stricken if the private attorney general ban is unenforceable, the arbitration agreement must be stricken from the customer agreement.

Even if the agreement was enforceable, Plaintiff's claims regarding telephone solicitations are outside the scope of the arbitration clause because they do not relate to the Agreement or his prior service.  Accordingly, Defendant's Motion to Force Arbitration, *Doc. 4*, should be denied.

Respectfully submitted,

SKAAR & FEAGLE, LLP

by:      /s/ James M. Feagle
        James M. Feagle
        Georgia Bar No. 256916
        jfeagle@skaarandfeagle.com
        2374 Main Street
        Suite B
        Tucker, GA 30084
        404 / 373-1970
        404 / 601-1855 fax

        Kris Skaar
        Georgia Bar No. 649610
        kskaar@skaarandfeagle.com
        133 Mirramont Lake Drive
        Woodstock, GA 30189
        770 / 427-5600
        404 / 601-1855 fax

        ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF COMPLIANCE WITH LR 5.1B & 7.1D, NDGa.**

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared with one of the font and point selections approved by the court in LR 5.1B, to wit:

[x]    Times New Roman, 14 point; or

[ ]    Courier New, 12 point.

SKAAR & FEAGLE, LLP

by:      /s/ James M. Feagle
         James M. Feagle
         Georgia Bar No. 256916
         jfeagle@skaarandfeagle.com
         2374 Main Street
         Suite B
         Tucker, GA 30084
         404 / 373-1970
         404 / 601-1855 fax

         ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, James M. Feagle, hereby certify that I have this day filed the within and foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO FORCE ARBITRATION using the CM/ECF system which shall contemporaneously send notice to all counsel of record pursuant to Fed. R. Civ. P. 5(b)(2)(E) and 5(b)(3).

SKAAR & FEAGLE, LLP

by:    */s/ James M. Feagle*
       James M. Feagle
       Georgia Bar No. 256916
       jfeagle@skaarandfeagle.com
       2374 Main Street
       Suite B
       Tucker, GA 30084
       404 / 373-1970
       404 / 601-1855 fax

       ATTORNEY FOR PLAINTIFF